IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**REBECCA K.,**

      **Plaintiff,**

  v.

      Civil Action 2:21-cv-1503
      Judge Sarah D. Morrison
      Magistrate Judge Elizabeth P. Deavers

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Rebecca K., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for social security disability insurance benefits ("DIB") and supplemental security income ("SSI"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 14), the Commissioner's Memorandum in Opposition (ECF No. 17), and the administrative record (ECF No. 10). Plaintiff did not file a Reply. For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

### I.  BACKGROUND

Plaintiff protectively filed her applications for DIB and SSI in January 2019, alleging that she has been disabled since March 29, 2018, due to seizures/epilepsy, anxiety, and Positional Tachycardia Syndrome ("POTS"). (R. at 227-235, 283.) Plaintiff's applications were denied initially in May 2019 and upon reconsideration in October 2019. (R. at 64-145.) Plaintiff sought a *de novo* hearing before an administrative law judge. (R. at 224-226.) Plaintiff, who was

represented by counsel, appeared and testified at a telephone hearing held on July 16, 2020. (R. at 33-63.) A Vocational Expert ("VE") also appeared and testified. (*Id.*) Administrative law judge Gregory Smith (the "ALJ") issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act on August 28, 2020. (R. at 12-32.) The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-6.) This matter is properly before this Court for review.

## II. HEARING TESTIMONY

The ALJ summarized Plaintiff's relevant hearing testimony and statements to the agency as follows:

> [Plaintiff] testified that her biggest problem is the uncertainty of the seizures. However, most recent evidence showed that Dr. Hart took her off seizure medications because she could not determine whether [Plaintiff] had any other type of convulsion. Thereafter, in February 2020, she reported a dramatic decline in psychogenic events after attending weekly therapy. Also, she reported that she has problems with her heartbeat when she stands up too fast, but her POTS was stable in 2018 with no subsequent evidence of persistent symptoms of this impairment.
>
> [Plaintiff] has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. In a function report, she reported that she got her kids ready for school, cleaned, played games, watched television, fed the pets and gave water to them, played with the pets, prepared food or meals for 30-60 minutes, did laundry and dishes for a few hours weekly, shopped in stores once or twice a week for one hour, and took her kids to concerts. At a consultative examination, she reported that she took care of her sons during the day. At the hearing, she testified that she homeschools the kids and takes care of the household.

(R. at 24 (internal citations omitted).)

## III. MEDICAL RECORDS

The ALJ summarized the relevant medical records concerning Plaintiff's physical impairments as follows:

The objective record documents that on March 8, 2018, [Plaintiff] was prescribed Divalproex medication during an emergency room (ER) visit at Fairfield Medical Center after reporting having seizures. Subsequently, in May 2018, it was noted that "intractable spells" were found on previous testing, but at that time, a long-term electroencephalography (EEG) did not establish any diagnostic evidence of the etiology of her condition or seizures.

Additionally, [Plaintiff] has history of POTS treated with Florinef. In April 2018, it was noted that an episode of palpations had resolved. At this time, she also reported episodes of syncope and that she had been prescribed Fludrocortisone/salt tablets. Thereafter, in June 2018, she was told to maintain adequate hydration, wear compression stockings, and consume a salty snack prior to vigorous exercise or exposure to heat. Notably, thereafter, the medical records do not document frequent complaints of POTS.

Notably, progress notes documented no report of seizures from June 2018 to January 2019. In February 2019, [Plaintiff] presented to the ER after falling downstairs. At this time, she reported occasional use of alcohol. During this ER visit, she did not report having seizures. At a subsequent hospitalization, she reported that she was taking Depakote (1,000 milligrams (mg), two times daily (bid)) and Vimpat (300 mg, bid) but that she had stopped taking all of her medications. She reported having two "buzzing feeling" seizures since she stopped taking her medications. During hospital course, an EEG was again non-diagnostic. On discharge, she was prescribed Vimpat (300 mg, bid) and Onfi (20 mg, bid).

Subsequently, in April 2019, at a medical visit, [Plaintiff] did not report having seizures. Jay Bauerle, M.D., in May 2019, concluded that her seizures were "probably more suggestive of a nonepileptic etiology" but noted that an epileptic etiology could not be entirely excluded. Dr. Bauerle noted that control had been unobtainable but that she had no events off medication. Dr. Bauerle referred her for evaluation with a doctor who had a subspecialty in epilepsy.

[Plaintiff], on August 6, 2019, reported an "episode." Sheri Hart, M.D., diagnosed her with localization-related symptomatic epilepsy and prescribed her Vimpat (150 mg, two tablets, twice a day), Clobazam (10 mg), and Ativan (1 mg).

There is a gap in medical records from September 2019 to November 2019. On December 5, 2019, during a follow up visit, Dr. Hart noted that an event captured on video showed a psychological non-epileptic spell and instructed [Plaintiff] to wean off seizure medications because she could not determine whether [Plaintiff] had any other type of convulsion. Thereafter, in February 2020, she reported a dramatic decline in her events after attending weekly therapy.

\*\*\*

> Her POTS was stable in 2018 with no subsequent evidence of persistent symptoms of this impairment.

(R. at 22-23 (internal citations omitted).)  The ALJ also summarized the relevant medical source opinions in the record as follows:

> The State agency medical consultants opined that [Plaintiff] has the residual functional capacity for light work with no climbing ladders, ropes, or scaffolds and no exposure to hazards. The undersigned finds persuasive [sic] because it is supported by the record as a whole. As discussed above, [Plaintiff] had seizures during the period in consideration. However, her POTS was stable in 2018 with no subsequent evidence of persistent symptoms of this impairment.
>
> The State agency medical consultants opined that [Plaintiff] has the residual functional capacity for no high pace or production requirements and occasional, superficial contact with others. They opined that [Plaintiff] required relatively consistent day-to-day job duties and explained changes. The undersigned finds this opinion is somewhat persuasive because superficial contact with other is not supported by the record as a whole.
>
> The Ohio Opportunities for Ohioans with Disabilities indicated that [Plaintiff] possibly required a reasonable [accommodation] associated with speed or attendance due to seizures. They also concluded that [Plaintiff] did not need supported work. The undersigned finds that this opinion is unpersuasive because it is unclear what individual rendered this opinion.
>
> Examining psychologist Miller opined that [Plaintiff] had no limitations in carrying out one and two step tasks. The undersigned finds that this opinion is persuasive because it is consistent with the record as a whole. At a medical visit, it was noted that her concentration was intact. At the consultative examination, her concentration was fair to normal. On one occasion, she recalled two out of three items after a 5-minute recall. However, at this time, her recent memory and remote memory were intact.
>
> The undersigned finds that a report from Laura Rex, and Karen Clark, service provider, from Functional Training Services documenting that [Plaintiff] had seizures is unpersuasive. These reports are partially based on [Plaintiff's] report of seizures.

(R. at 25 (internal citations omitted).)

## IV.  ADMINISTRATIVE DECISION

On August 28, 2020, the ALJ issued his decision.  (R. at 12-32.)  The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2022.  (R. at 17.)  At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff has not engaged in substantially gainful activity since March 29, 2018, the alleged onset date.  (*Id.*)  The ALJ found that Plaintiff had the severe impairments of seizure disorder, POTS, anxiety, and depression.  (R. at 18.)  The ALJ further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id.*).  Before proceeding to Step Four, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, [the ALJ] finds that [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). She can lift/carry 20 pounds occasionally and 10 pounds frequently. She can stand for 6 hours in an 8-hour workday. She can walk for 6 hours. She can sit for 6 hours. She can push/pull as much as she can lift/carry. She cannot climb ladders, ropes, or scaffolds. She can never work at unprotected

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. § 404.1520(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

5

> heights or around moving mechanical parts. She can never operat[e] a motor vehicle. She can occasionally work in extreme heat. She is able to perform simple, routine and repetitive tasks but not at a production rate pace (e.g. assembly line work). She is able to occasionally interact with supervisors, coworkers, and the general public. She is only able to tolerate occasional changes in a routine work setting.

(R. at 21.)

At step four of the sequential process, the ALJ determined that Plaintiff is unable to perform her past relevant work as a teacher aide, layaway clerk, and retail clerk. (R. at 25-26.) Relying on the VE's testimony, the ALJ concluded at step five that Plaintiff can perform other jobs that exist in significant numbers in the national economy. (R. at 26-27.) He therefore concluded that Plaintiff was not disabled under the Social Security Act at any time since March 29, 2018. (R. at 27.)

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the

6

Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives [Plaintiff] of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

Plaintiff sets forth two contentions of error: (1) the ALJ's RFC is not supported by substantial evidence, and (2) the ALJ failed to adequately explain her finding at Step Three that Plaintiff did not meet or equal the criteria of Listing 11.02A. (ECF No. 14 at PAGEID ## 1508-1513). Specifically, Plaintiff argues that the ALJ's RFC "is not supported by substantial evidence because [Plaintiff] would need flexible breaks and additional time off task," and the ALJ "failed to include accommodations for [her] impairments in her RFC determination or in the alternative explain why these specific limitations were disregarded." (*Id.* at PAGEID ## 1508-1509.) Plaintiff also argues that she "has put forth sufficient evidence to demonstrate that her impairments meet and/or equal Listing 11.02A," but the ALJ disregarded that evidence when determining that Plaintiff did not meet the criteria for Listing 11.02A. (*Id.* at PAGEID ## 1510-1513.)

7

In response, the Commissioner argues that "substantial evidence supports the ALJ's decision that Plaintiff was not disabled and that she could do environmentally restricted light work despite her seizure and blood circulation disorders." (ECF No. 17 at PAGEID # 1527.) The Commissioner cites testimony and medical record evidence to argue that "[t]his is exactly the relevant evidence a reasonable mind might accept as adequate to support a conclusion under the substantial evidence standard and the ALJ's decision should be affirmed." (*Id.* at PAGEID # 1528 (citation omitted).) The Commissioner further argues that Plaintiff has failed to meet her high burden of proving that she met or medically equaled Listing 11.02A, as additional testimony and medical record evidence support the ALJ's conclusion that Plaintiff's "medical records do not document" the "severe clinical findings" outlined in Listing 11.02A. (*Id.* at PAGEID ## 1529-1530.) Plaintiff did not file a Reply brief, so the briefing is ripe for judicial review. The Undersigned will address each of Plaintiff's arguments in turn.

**A.      The ALJ's RFC is Supported by Substantial Evidence.**

Plaintiff first argues that the ALJ's RFC is not supported by substantial evidence. (ECF No. 14 at PAGEID ## 1508-1509.) Specifically, Plaintiff asserts that the RFC "does not provide appropriate accommodations for [Plaintiff's] required need for additional time, flexible breaks and absences." (*Id.*)

The determination of a plaintiff's RFC is entirely within the purview of the ALJ, and "this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Here, the ALJ found that Plaintiff had the RFC to perform light work. (R. at 21.) In reaching this conclusion, the ALJ acknowledged that "[a]t the hearing, [Plaintiff] testified that her biggest problem is the uncertainty of the seizures," that "[s]he reported that she

needs to rest for a few hours afterwards," and that "she has problems with her heartbeat when she stands up too fast." (R. at 22.) But the ALJ also noted that both of those conditions were substantially under control by the time of Plaintiff's administrative hearing in July 2020, at which time Plaintiff testified that her "neurologist said that [Plaintiff's seizures] were non-epileptic seizures." (*Id; see also* R. at 46.) Specifically, the ALJ noted that after June 2018, "the medical records do not document frequent complaints of POTS" and "in February 2020, [Plaintiff] reported a dramatic decline in her [seizure] events after attending weekly therapy." (R. at 22-23 (citing R. at 1394).) The ALJ also discussed at length Plaintiff's own description of her daily activities, which the ALJ commented "are not limited to the extent one would expect." (R. at 24.) Specifically, the ALJ noted that Plaintiff "reported that she got her kids ready for school, cleaned, played games, watched television, fed the pets and gave water to them, played with the pets, prepared food or meals for 30-60 minutes, did laundry and dishes for a few hours weekly, shopped in stores once or twice a week for one hour, and took her kids to concerts." (*Id.* (citing R. at 293-295).) The ALJ also discussed Plaintiff's own reports that "she took care of her sons during the day" and "she homeschools the kids and takes care of the household." (*Id.* (citing R. at 1335).)

This Court must look at the record as a whole and determine if substantial evidence supports the ALJ's RFC. *Schalk v. Comm'r of Soc. Sec.*, No. 10-13894, 2011 WL 4406824, at *11 (E.D. Mich. August 30, 2011), *report and recommendation adopted*, No. 10-13894, 2011 WL 4406332 (E.D. Mich. Sept. 22, 2011). In the instant case, the ALJ's RFC determination properly included limitations to account for Plaintiff's symptoms in light of the objective medical evidence and other record evidence. Plaintiff fails to explain why the facts here require additional limitations. Instead, Plaintiff simply cites speculative limitations that she believes

9

should have been included in the RFC. (ECF No. 14 at PAGEID # 1509 ("[A]dditional, and flexible breaks are supported and appropriate based on the substantial evidence of the record.").)

But here, as is evident from the evidence discussed above, the ALJ properly evaluated the record and provided sufficient explanation based on substantial evidence that Plaintiff would be able to complete light work. Plaintiff has offered nothing to the contrary beyond speculative limitations which arguably could have been included in the ALJ's RFC. But that is not the standard, and even if Plaintiff's limitations could be supported by substantial evidence, that would not be enough. *Longworth*, 402 F.3d at 595; *Nash v. Comm'r of Soc. Sec.*, No. 19-6321, 2020 WL 6882255, at *4 (6th Cir. Aug. 10, 2020) ("Even if the record could support an opposite conclusion, we defer to the ALJ's finding because it is supported by substantial evidence, based on the record as a whole.") (internal citations omitted). In short, reviewing the record as a whole, substantial evidence demonstrates that the ALJ's RFC adequately accounted for all of the limitations he found credible. Accordingly, Plaintiff's first assignment of error is not well taken.

**B.     The ALJ Properly Found that Plaintiff Did Not Meet the Criteria of Listing 1.04.**

The second issue before the Court is whether the ALJ erred in determining that Plaintiff does not meet Listing 11.02A. (*See* ECF No. 14 at PAGEID ## 1510-1513.) To satisfy Listing 11.02A, Plaintiff must have an impairment as follows:

> 11.02. Epilepsy, documented by a detailed description of a typical seizure and characterized by [. . .] :
>
>> A. Generalized tonic-clonic seizures (see 11:00H1a), occurring at least once a month for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.02.

Plaintiff has the burden of proving that she meets or equals all of the criteria of a listed impairment. *Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 470, 472 (6th Cir. 2012) ("Plaintiff

had the burden of showing that his impairments were equal or equivalent to a listed impairment.") (citing *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001)). A decision that a claimant meets a listed impairment "must be based solely on medical evidence supported by acceptable clinical and diagnostic techniques." *Land v. Sec'y of H.H.S.*, 814 F.2d 241, 245 (6th Cir. 1986). In determining whether a claimant satisfies the requirements of a listing, the ALJ must "actually evaluate the evidence, compare it to Section [11.02A] of the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review. Without it, it is impossible to say that the ALJ's decision . . . was supported by substantial evidence." *Reynolds v. Comm'r of Soc. Sec.,* 424 F. App'x 411, 416 (6th Cir. 2011) (citations omitted). Additionally, the record evidence must show that Plaintiff's impairment "has lasted or can be expected to last for a continuous period of 12 months." 20 C.F.R. § 404.1525(c)(4).

Here, the ALJ found that Plaintiff does not meet any of the findings needed for Listing 11.02, including Listing 11.02A, for the following reasons:

> The medical records do not document these severe clinical findings. There were months during the period of consideration where [Plaintiff], at medical visits, did not report having seizures. Additionally, her doctor took her off seizure medications. Thus, [Plaintiff's] impairment does not meet listing 11.02.

(R. at 19 (internal citations omitted).) Plaintiff takes issue with the ALJ's finding for multiple reasons. First, Plaintiff argues that "[t]he record is replete with evidence supporting [Plaintiff's] significant and long history with seizures," and that the record "also supports the Listing level frequency of seizures experienced by [Plaintiff]." (ECF No. 14 at PAGEID # 1511.) Specifically, Plaintiff notes that in March 2018, she "reported having 51 seizures since January 2018." (*Id.* (citing R. at 391).) Plaintiff thus maintains that she has met her burden of proof, and argues that "[a]s such, the ALJ was required to evaluate that evidence, compare it to the listings,

11

and provide a detailed [explanation] of her conclusion to the contrary." (*Id.*) To that end, Plaintiff then argues that the ALJ "summarily disregarded the evidence of the record based on her lay opinion," and therefore erred "by discounting the substantiated evidence of the record." (*Id.* at PAGEID # 1512.)

The Commissioner rejects each of these positions. First, the Commissioner argues that Plaintiff "did not carry her burden to prove she met or equaled every element of the listing for epilepsy." (ECF No. 17 at PAGEID ## 1529-1536.) The Commissioner notes that the applicable regulations expressly exclude "psychogenic nonepileptic seizures and pseudoseizures" from Listing 11.02A, and contends that "Plaintiff entirely ignores that her seizures were repeatedly classified as psychogenic or psychological, as the ALJ noted." (*Id.* at PAGEID ## 1529-1531 (citing R. at 23-24).) The Commissioner further asserts that the ALJ correctly discussed Plaintiff's history of seeking treatment without reporting a history of seizures, and that the ALJ also correctly recognized that Plaintiff was "non-compliant with medication." (*Id.* at PAGEID # 1530.) The Commissioner also rejects Plaintiff's assertion that the "record is replete with evidence supporting [Plaintiff's] significant and long history with seizures" and argues that such claim "is merely an improper attempt to have this Court reweigh the evidence." (*Id.* at PAGEID # 1531.)

The Undersigned finds the Commissioner's arguments to be well taken, and agrees that Plaintiff has failed to meet her high burden of proving that she meets or exceeds each of the elements for Listing 11.02A. While the ALJ's analysis of Listing 11.02 was brief, the Court finds no error as the ALJ cited substantial evidence throughout his decision to support his finding that Plaintiff did not meet the elements of the Listing. First, and most significantly, Plaintiff has

failed to demonstrate that her seizure activity falls within the purview of Listing 11.02A, as the record contains plentiful evidence which supports that Plaintiff's seizures were nonepileptic:

- R. at 46: Plaintiff testified that "[her] neurologist said that they were non-epileptic seizures."

- R. at 436: Jennifer Rowe Keller, CNP reported that Plaintiff had "a history of document [psychogenic nonepileptic seizures] in [May] 2018."

- R. at 828-829: Jason Rogness Bisping, MD reported that Plaintiff had three nonepileptic "events" during a four-day monitoring session in March 2017.

- R. at 880: Adam Ueberroth, MD, APBN reported that Plaintiff "had one nonepileptic event" on January 2, 2018, but her EEG was "completely normal" and "[n]o epileptiform activity is seen."

- R. at 1400: Sheri Hart, MD, PhD reported that Plaintiff had experienced "a psychological non epileptic spell" in December 2019.

To this end, the Commissioner is correct that non-epileptic seizures do not satisfy Listing 11.02A. *See Dixon v. Comm'r of Soc. Sec. Admin.*, No. 3:11-CV-482, 2012 WL 2826970, at *6 (N.D. Ohio July 10, 2012) ("Plaintiff's diagnosis of non-epileptic spells not only precluded her from meeting Listing 11.02 and 11.03, but also reasonably precluded her from medically equaling either listing also."). The Undersigned therefore finds that Plaintiff has failed to meet her burden on this threshold element of Listing 11.02A.[2]

---

[2] Plaintiff repeatedly characterizes her seizures as "petit mal" in nature, and only argues in passing that "[a]t times, these seizures can progress to tonic" and are "occasional[ly] clonic." (ECF No. 14 at PAGEID ## 1507, 1511 (citing R. at 910).) Plaintiff therefore has not argued, let alone met her burden of proving, that her seizures are tonic-clonic in nature as required by Listing 11.02A.

13

The Court also finds that Plaintiff has failed to prove that she experiences her seizures "despite adherence to prescribed treatment" as required by Listing 11.02A. To this end, the ALJ correctly noted that Plaintiff was "non-compliant with medication," citing a medical record from March 2019 in which Mary Shannon Wilson, MSN, CNP notes that Plaintiff was no longer on medication, as her doctor did not refill her prescription. (R. at 24 (citing R. at 1281).) More significantly, however, Plaintiff herself affirmatively testified that she is off medication:

> Q: And what medications are you taking for it?
>
> A: **Currently I'm off all epileptic medications** and now I'm on Latuda and Klonopin and there's one other one. Let me see if I can look that up on the internet here, it's right here. It's right next to me. I can't say it, Glonbacine [PHONETIC].
>
> Q: Do you know why doctors took you off all epileptic medications?
>
> A: **My neurologist said that they were non-epileptic seizures.**
>
> Q: How long have you been off the medications --
>
> A: I've been off since, she weaned me off January, February so **I think the last time I took any of the seizure medicine was probably in February.**

(R. at 46 (emphasis added).) Plaintiff makes no effort to explain how she meets Listing 11.02A in light of this testimony. At the very least, the Undersigned agrees with the Commissioner that the ALJ's finding in this regard is supported by substantial evidence. (R. at 19 (Noting that "her doctor took her off seizure medications.").) Plaintiff therefore has also failed to meet her high burden of meeting this additional element of Listing 11.02A. Accordingly, Plaintiff's second assignment of error is not well taken.

## VII. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Based on the foregoing, it is

14

therefore **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED.**

## VIII.   PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report an\d Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a forfeiture of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  Even when timely objections are filed, appellate review of issues not raised in those objections is forfeited.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date:   April 7, 2022                              /s/ *Elizabeth A. Preston Deavers*
                                                           Elizabeth A. Preston Deavers
                                                           United States Magistrate Judge

15